UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WANDA R.,

               Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

**DECISION AND ORDER**

6:21-CV-06105-EAW

## INTRODUCTION

Plaintiff Wanda R. ("Plaintiff") seeks attorneys' fees in the amount of $20,667.53 pursuant to 42 U.S.C. § 406(b). (Dkt. 14). The Commissioner of Social Security ("the Commissioner") neither supports nor opposes Plaintiff's fee request. (Dkt. 16). For the reasons that follow, the Court grants Plaintiff's motion.

## BACKGROUND

On February 2, 2021, Plaintiff filed this action, seeking review of the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB"). (Dkt. 1). Plaintiff moved for judgment on the pleadings on December 20, 2021. (Dkt. 8). On April 1, 2022, the Court approved the parties' stipulation for remand, reversing the Commissioner's final decision, and remanding the matter for further proceedings. (Dkt. 10).

By Stipulated Order filed on May 4, 2022, the Court approved payment of $6,140.41 to Plaintiff's counsel pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"), for services performed in connection with this action. (Dkt. 13).

- 1 -

On November 8, 2022, the Commissioner issued a Notice of Award in connection with Plaintiff's claims, which stated that it withheld $13,781.53 from Plaintiff's past-due benefits to pay for Plaintiff's attorneys' fees. (Dkt. 14-3 at 3, 7). On July 17, 2023, the Commissioner issued two Notices of Award in connection with Plaintiff's children's auxiliary benefits, which stated that it withheld 25 percent of their past-due benefits—$3,813.50 and $3,072.50—to pay to their representative. (Dkt. 14-6 at 3, 9).

On August 18, 2023, Plaintiff moved pursuant to 42 U.S.C. § 406(b) seeking $20,667.53 in attorneys' fees. (Dkt. 14). In her motion, Plaintiff's counsel indicates that her firm was awarded $6,140.41 under the EAJA, which she will refund to Plaintiff. (Dkt. 14-1 at 2). The Commissioner filed a response on August 31, 2023. (Dkt. 16). On November 1, 2023, in response to the Court's Text Order, Plaintiff's counsel submitted a missing exhibit reflecting the hours worked on the case. (Dkt. 19). On December 1, 2023, in response to another Text Order from the Court, Plaintiff submitted supplemental briefing addressing the timing of the § 406(b) application and the work dedicated to seeking the auxiliary benefits for Plaintiff's children. (Dkt. 20).

## DISCUSSION

### I. Timeliness of the Motion

Generally, a fee application under § 406(b) must be filed within 14 days after the entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(1). Rule 54(a)(2)(B) as applied to § 406(b) motions for attorneys' fees, requires that a party moving for attorneys' fees file the motion within 14 days of notice of a benefits award. *Sinkler v. Berryhill*, 932 F.3d 83, 88 (2d Cir. 2019). Additionally, a presumption applies that a notice is received "three days after

mailing." *Id*. at 89 n.5; *see also* Fed. R. Civ. P. 6(d).  Moreover, it has been determined that the 14-day limitation period is subject to equitable tolling "until the claimant receives notice of the amount of a benefits award.  That is because the benefits award amount is necessary to identify the maximum attorney's fee that may be awarded under § 406(b)." *Sinkler*, 932 F.3d at 85.

Here, the Commissioner issued three Notices of Award—one related to Plaintiff's DIB claim and two Notices associated with Plaintiff's claims for child auxiliary benefits.  (Dkt. 14-3; Dkt. 14-6).  Even though the Notice of Award associated with Plaintiff's DIB claim was issued on November 8, 2022, it was not until July 28, 2023, when Plaintiff's counsel received by facsimile the amended Notices of Award related to Plaintiff's child auxiliary benefits.  (Dkt. 14-2 at ¶ 39).  Thus, it was not until then that counsel was able to ascertain Plaintiff's total past-due benefits and the maximum attorneys' fees that she could seek under § 406(b).  (Dkt. 14-1 at 3; Dkt. 14-2 at ¶ 39; Dkt. 14-6).[1]  Accordingly, the Court concludes that the timeliness of the present fee application should be assessed from July 28, 2023—the date that Plaintiff's counsel received the Notices of Award related Plaintiff's children's auxiliary benefits.  *See Georgette T. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00846-EAW, 2024 WL 1192993, at *2 (W.D.N.Y. Mar. 20, 2024) (concluding that time period for filing § 406(b) motion tolled until notice regarding Plaintiff's child's

---

[1] Counsel submits that the original Notices of Award related to Plaintiff's children's claims were issued in March 2023; however, her office had to request their amendments due to various errors contained in the Notices. (Dkt. 14-2 at ¶¶ 33-39; Dkt 14-6; Dkt. 14-8).

benefits claim was issued, because until then counsel could not determine the maximum attorneys' fees available, and collecting cases reaching the same conclusion).

Therefore, Plaintiff's instant fee application was due on or about August 11, 2023. However, it was not filed until a week later on August 18, 2023. (Dkt. 14). In other words, even running the deadline from the date that Plaintiff's counsel received the Notices of Award related to Plaintiff's children's auxiliary benefits on July 28, 2023, the present application is untimely.

Plaintiff's counsel requests that the Court exercise its discretion and excuse the untimely filing in light of the difficulties that her office experienced obtaining copies of the ALJ's amended decision and amended Notices of Award, which caused her office to take extra time and exercise more scrutiny when making the determination about the filing the instant motion. (Dkt. 14-1 at 3-4). In her affidavit, counsel explains in detail the efforts that her firm undertook to have the Social Security Administration correct the ALJ's original decision, as well as the Notices of Award related to Plaintiff's auxiliary claims, due to the numerous errors contained in the documents. (Dkt. 14-2 at ¶¶ 11-24, 31, 34, 36-39).

Among such errors was the ALJ's erroneous approval of the attorney fee agreement, which, if remained unchanged in the decision, would have barred counsel from submitting a fee petition for the Commissioner's approval. (Dkt. 14-1 at 3; Dkt. 14-4 at 25); *see* SSA POMS GN 03940.001(A) Fee Agreement Process – Overview ("SSA has two alternative methods of authorizing representatives' fees: the fee petition process . . . , and the fee agreement process . . . ."). Although the erroneous approval of the fee agreement was later

vacated by the Regional Chief ALJ, that decision predated the ALJ's amended decision that was silent about Plaintiff's counsel's fee petition. (Dkt. 14-5; Dkt. 14-9 at 3-5). Because the amended decision did not address the fee petition, counsel was concerned that her future fee petition would not be approved by the Commissioner. (Dkt. 14-1 at 3).

Counsel further submits that once her office received the Notices of Award associated with Plaintiff's auxiliary claims on July 28, 2023, the firm's fee specialist team became involved in reviewing the Notices and assessing the likelihood of avoiding filing the instant motion in favor of a fee petition. (Dkt. 14-2 at ¶ 39-42). The instant motion was filed a day after the fee specialist team determined that the motion was necessary to avoid the firm's possible difficulty with submitting the fee petition for the Commissioner's approval. (Dkt. 14-1 at 4; Dkt. 14-2 at ¶ 42). Counsel does not explain why it took three weeks to make that determination, but indicates that the delay was necessary to "ensure that [her] client's benefits and [her] fee calculations were correct." (Dkt. 14-1 at 3). She argues that the delay should be excused as it did not cause harm to the Commissioner and was reasonable given the circumstances of the case. (*Id.* at 3-4).

While Rule 54 requires a fee motion be filed within 14 days, a court "may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *see also Sinkler*, 932 F.3d at 89 ("district courts are empowered to enlarge [the 14-day] filing period where circumstances warrant"). "'[E]xcusable neglect' is an 'elastic concept,' that is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 228 (2d Cir. 2004) (internal citation

omitted). "To determine whether a party's neglect is excusable, a district court should take into account: '[1][t]he danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith.'" *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993)) (alterations in original).

Although Plaintiff's counsel's request to extend the deadline would have more appropriately been supported by an affidavit from a member of the law firm's fee specialist team addressing why it took three weeks to decide whether to file the instant motion, the Court nonetheless finds that the circumstances of the instant case warrant excusing Plaintiff's untimely filing for several reasons. First, the delay in filing was relatively brief, at least when evaluated from the date of the Notices sent by facsimile on July 28, 2023. *See, e.g.*, *Ferreira v. Kijakazi*, No. 18-cv-1469 (AEK), 2022 WL 123623, at *3 (S.D.N.Y. Jan. 13, 2022) (a 30-day delay was excused where there was record of counsel's efforts to meet the deadline and solicit the information regarding the benefit award despite the confusion caused by the SSA's issuance of several notices of awards); *Eddie Lee S. v. Comm'r of Soc. Sec.*, No. 18-CV-186(HKS), 2021 WL 5296907, at *2 (W.D.N.Y. Nov. 15, 2021) (plaintiff's six-day delay excused); *Lesterhuis v. Comm'r of Soc. Sec.*, 408 F. Supp. 3d 292, 295 (W.D.N.Y. 2019) (a nine-day delay excused); *Tanner v. Comm'r of Soc. Sec.*, No. 5:15-CV-577(TJM/ATB), 2018 WL 6521585, at *3 (N.D.N.Y. Dec. 12, 2018) (application filed within 19 days of notice not rejected as untimely where delay was brief and not a bad-faith attempt to increase the recovered fees). Second, the Court recognizes

the effort that Plaintiff's counsel's firm undertook to correct the errors in the original ALJ's decision and the Notices of Award related to Plaintiff's auxiliary claims, and, in light of such errors, finds it reasonable that the firm invested additional time and effort into determining whether to file the instant motion instead of a fee petition. Lastly, the Court does not find that the delay caused any prejudice to the Commissioner or to any other party. Accordingly, Plaintiff's untimely filing of the instant motion is excused.

## II. The Reasonableness of the Requested Fee

Section 406(b) provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . .

42 U.S.C. § 406(b)(1)(A). In other words, § 406(b) allows a successful claimant's attorney to seek court approval of his or her fees, not to exceed 25 percent of the total past-due benefits. Section 406(b) "calls for court review of [contingent-fee] arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002). This review is subject to "one boundary line: Agreements are unenforceable to the extent that they provide for fees exceeding 25 percent of the past-due benefits." *Id*. "Within the 25 percent boundary, . . . the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered." *Id*.

Accordingly, a fee is not automatically recoverable simply because it is equal to or less than 25 percent of the client's total past-due benefits. "To the contrary, because section

406(b) requires an affirmative judicial finding that the fee allowed is 'reasonable,' the attorney bears the burden of persuasion that the statutory requirement has been satisfied." *Id*. at 807 n.17. As such, the Commissioner's failure to oppose the motion is not dispositive. *Mix v. Comm'r of Soc. Sec.*, No. 6:14-CV-06219 (MAT), 2017 WL 2222247, at *2 (W.D.N.Y. May 22, 2017). Several factors are relevant to the reasonableness analysis, including the following: (1) "whether the contingency percentage is within the 25% cap[;]" (2) "whether there has been fraud or overreaching in making the agreement[;]" and (3) "whether the requested amount is so large as to be a windfall to the attorney." *Wells v. Sullivan*, 907 F.2d 367, 372 (2d Cir. 1990). Also relevant are the following: (1) "the character of the representation and the results the representative achieved[;]" (2) "the amount of time counsel spent on the case[;]" (3) whether "the attorney is responsible for delay[;]" and (4) "the lawyer's normal hourly billing charge for noncontingent-fee cases." *Gisbrecht*, 535 U.S. at 808.

When determining whether a requested fee constitutes a windfall, courts are required to consider: (1) "the ability and expertise of the lawyers and whether they were particularly efficient[,]" (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level[,]" (3) "the satisfaction of the disabled claimant[,]" and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Fields v. Kijakazi*, 24 F.4th 845, 854-55 (2d Cir. 2022).

Here, Plaintiff's counsel seeks $20,667.53 and states that this amount is not greater than 25 percent of Plaintiff's total past-due benefits. (Dkt. 14-1 at 2). Utilizing the factors

set forth above, the Court finds that there is no evidence of fraud or overreaching in the making of the contingency agreement between counsel and Plaintiff. Counsel provided effective representation resulting in Plaintiff successfully receiving the benefits sought. There is no reason to believe that Plaintiff is dissatisfied with the outcome of such representation. Here, the success of Plaintiff's claims was uncertain as demonstrated by multiple denials of her application at the agency level. Accordingly, the hours expended by counsel were reasonable in light of the issues presented, the extent and character of representation, Plaintiff's counsel's expertise, and the absence of any significant delay in the proceedings caused by counsel.

The requested fee would result in a *de facto* hourly rate of $715.14 ($20,667.53 divided by 28.9 hours). (Dkt. 14-1 at 9, 10; Dkt. 18-1 at 2). The Court finds that neither the *de facto* hourly rate, nor the overall requested attorneys' fees amount, constitutes a windfall. Even though the hourly rate requested is greater than Plaintiff's counsel's normal hourly rate of $400.00 per hour (Dkt. 14-2 at ¶ 47), counsel's successful representation of Plaintiff's interests ultimately achieved reversal of the Commissioner's decision and remand of Plaintiff's application solely for calculation and payment of benefits. (Dkt. 14-4; Dkt. 14-5). The effective hourly rate of $715.14 falls within (or below) the range of rates under § 406(b) approved by courts. *See e.g.*, *Fields,* 24 F.4th at 856 (an effective hourly rate of $1,556.98 was not a "windfall"); *Valle v. Colvin*, No. 13-CV-2876 (JPO), 2019 WL 2118841, at *3 (S.D.N.Y. May 15, 2019) (effective hourly rate of $1,079.72 did not constitute "windfall" to counsel); *Mills v. Berryhill*, No. 15-CV-5502 (DLI), 2019 WL 1507923, at *2 (E.D.N.Y. Apr. 5, 2019) (effective hourly rate of $1,007.78 was

reasonable); *McDonald v. Comm'r of Soc. Sec.*, No. 16-CV-926-FPG, 2019 WL 1375084, at *2 (W.D.N.Y. Mar. 27, 2019) (awarding fees with effective hourly rate of $1,051.64). Accordingly, in light of the above, the Court finds that a *de facto* hourly rate of $715.14 is reasonable and in line with awards generally approved in this District for similar work performed. The Court is also mindful that "payment for an attorney in a social security case is inevitably uncertain." *Wells*, 907 F.2d at 371. Accordingly, the Second Circuit has "recognized that contingency risks are 'necessary factors' in determining reasonable fees under § 406(b)." *Id*. (quotation marks omitted).

The Court also notes that counsel is required to return the previously awarded EAJA fee of $6,140.41 to Plaintiff. (Dkt. 13). *See Gisbrecht*, 535 U.S. at 796 ("Fee awards may be made under both [EAJA and § 406(b)], but the claimant's attorney must refund to the claimant the amount of the smaller fee . . . .").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorneys' fees under § 406(b) (Dkt. 14) is granted, and the Court hereby orders as follows: (1) Plaintiff's counsel is awarded attorneys' fees in the amount of $20,667.53; and (2) Plaintiff's counsel is hereby directed to refund the previously awarded EAJA fee of $6,140.41 to Plaintiff.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     March 28, 2024
           Rochester, New York